UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00067-GNS

MARIANA DAVALOS, et al.                                              PLAINTIFFS

v.

D AND R ENTERTAINMENT, INC.                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Default Judgment (DN 12), Defendant's Motion for Extension of Time (DN 15), Plaintiffs' Motion to Strike (DN 19), and Defendant's Motion to Set Aside Entry of Default and Amended Entry of Default, and Response to Plaintiffs' Motion for Default Judgment (DN 22). The matters are ripe for adjudication. For the reasons discussed below, Defendant's motions are **GRANTED**, and Plaintiffs' motions are **DENIED**.

### I.    STATEMENT OF FACTS

Plaintiffs Mariana Davalos, Cielo Jean Gibson, Eva Pepaj, Lucy Pinder, Jessica Rockwell, Claudia Sampedro, and Jennifer Zharinova ("Plaintiffs"), are professional models. (Compl. ¶¶ 9-15, DN 1). Defendant D and R Entertainment, Inc., d/b/a Top Hat Cabaret ("Top Hat"), is a "gentlemen's club" in Bowling Green, Kentucky. (Compl. ¶¶ 16-18). Throughout 2015 and 2016, Top Hat altered Plaintiffs' professional images to create advertisements on its Facebook page for promotional events. (Compl. ¶¶ 31-43; *see also* Compl. Ex. 1, DN 1-2). Plaintiffs never consented to Top Hat using their images for any purpose. (Compl. ¶ 42). On April 17, 2020, Plaintiffs sued Top Hat for violating the Lanham Act, infringing on Plaintiffs' Right of Publicity, misappropriating Plaintiffs' Right to Privacy, Negligence, Unjust Enrichment, and Unfair

Competition. (Compl. 10-22). Plaintiffs seek an injunction, disgorgement, compensatory and punitive damages, and attorneys' fees. (Compl. 23-25). Top Hat failed to appear, and on September 14, 2020, Plaintiffs moved for entry of default. (Pls.' Mot. Entry Default, DN 9). A default was entered on November 17, 2020, and an amended entry was entered on January 25, 2021, to include two erroneously omitted Plaintiffs. (Entry Default, DN 10; Am. Entry Default, DN 13). On December 31, 2020, Plaintiffs moved for default judgment. (Pls.' Mot. Default J., DN 12). On April 15, 2021, Top Hat moved for an extension of time to file a response to Plaintiffs' Motion for Default Judgment, and on April 22, answered Plaintiffs' Complaint. (Def.'s Mot. Ext. Time, DN 15; Answer, DN 18). Plaintiffs moved to strike Top Hat's Answer, and Top Hat moved to set aside the default and to respond to Plaintiffs' Motion for Default Judgment. (Pls.' Mot. Strike Answer, DN 19); Def.'s Mot. Set Aside Default & Resp. Pls.' Mot. Default J, DN 22 [hereinafter Def.'s Mot. Set Aside]).

## II. DISCUSSION

"Judgment by default is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983). The Sixth Circuit courts favor "trials on the merits . . . ." *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986) (citation omitted). Trial courts "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Under this standard, "'the district court enjoys considerable latitude' to grant a defendant relief from a default entry." *SEC v. Merklinger*, 489 F. App'x 937, 939 (6th Cir. 2012) (citation omitted). Three factors determine the outcome of such a motion: (1) "whether the plaintiff will be prejudiced"; (2) "whether the defendant has a meritorious defense"' and (3) "whether culpable conduct of the defendant led to

the default." *United Coin Meter Co.*, 705 F.2d at 845 (citation omitted). The Court will address each in reverse order.

A.     **Culpability**

"To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard Claims Serv., Inc.*, 796 F.2d at 194. "[M]ere negligence or failure to act reasonably is not enough to sustain a default." *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 327 (6th Cir. 2010).

On June 22, 2020, Plaintiffs served the Complaint to Top Hat's president, Janyce Brown ("Brown"), who had purchased Top Hat from its previous owners in 2017.[1] (Am. Doc. 1, DN 8; Brown Decl. ¶ 3, DN 22-3). Brown had no personal knowledge of the allegations in the Complaint, which referred to advertisements posted in 2015 and 2016 before she bought the company, and she believed the Complaint was not directed to Top Hat under her ownership, but to its previous owners. (Brown Decl. ¶¶ 4-6). Two weeks later, Brown forwarded the Complaint to the previous owners, who confirmed receipt of it and informed her that they had hired a third-party company to create and publish the advertisements listed in the Complaint. (Brown Decl. ¶¶ 7-8). Brown also forwarded the Complaint to Top Hat's insurance carrier. (Brown Decl. ¶ 9). Brown believed either party or both were handling the lawsuit and would contact her if they needed more information. (Brown Decl. ¶ 10). Brown believed she would not be involved in the suit, and therefore, did not take further action. (Brown Decl. ¶¶ 11-12). In early April, three months after

---

[1] Plaintiffs state in their Response that counsel sent a request for waiver of service to Top Hat on May 1, 2020, and that Brown confirmed receipt of the request on May 18, 2021, during a call. (Pls.' Resp. Def.'s Mot. Set Aside 4). As Plaintiffs' response was filed on May 17, 2021, the Court interprets this as a scrivener's error, and that Brown confirmed receipt on May 18, 2020. Brown did not include this information in her declaration, nor deny as much in Top Hat's reply.

Plaintiffs' served their Motion for Default Judgment, Brown spoke with Top Hat's insurance carrier and discovered nothing had been filed in the action. (Brown Decl. ¶ 13). Brown immediately retained counsel to investigate and moved for an extension of time. (Brown Decl. ¶ 14).

Top Hat's conduct surely does not exhibit an intent to thwart judicial proceedings, nor a reckless disregard for its effects. Brown did not simply discard the Complaint after being served, but reviewed it, and after mistakenly believing she—and by extension, Top Hat under her ownership—were not involved, forwarded the Complaint to the two parties she believed ought to know. Plaintiffs argue that Brown's belief "turns the entire concept of distinct corporate personhood on its head", and further note that the Complaint clearly alleged the posts remained on Top Hat's Facebook page through the date of the Complaint, which was three years after Brown acquired the company. (Pls.' Resp. Def.'s Mot. Set Aside 3-4, DN 26). But this only shows Brown exhibited negligence in her failure to determine whether Top Hat, under her ownership, could be held responsible for conduct taken by previous owners.

Plaintiffs note neither the previous owners or Top Hat's insurance carrier told Brown they were hiring counsel to defend the action or that Top Hat would be dismissed for someone else. (Pls.' Resp. Def.'s Mot. Set Aside 5). Furthermore, Plaintiffs argue that any belief that Brown or Top Hat were not involved was unreasonable by the third and fourth notice that litigation was moving forward without a response. (Pls.' Resp. Def.'s Mot. Set Aside 5). It was negligent, but not reckless, for Brown to believe that either party she thought was responsible would also handle the lawsuit, regardless if they specifically confirmed upon receiving the Complaint that they hired counsel. Furthermore, once Brown realized no action had been taken, she promptly hired counsel. Roughly two weeks after that, Brown sought, through counsel, an extension of time to respond.

"Given the circumstances, Defendant's actions subsequent to its receipt of actual notice were swift and appropriate." *OneMD-Louisville PLLC, LLC v. Digital Med, LLC*, No. 3:19-CV-468-CRS, 2020 WL 2461885, at *8 (W.D. Ky. May 12, 2020).

Plaintiffs maintain Brown's story is belied by the fact that, at some unknown point after receiving the Complaint but before appearing here, the offending posts were removed from Top Hat's Facebook page. (Pls.' Resp. Def.'s Mot. Set Aside 4). Plaintiffs argue this was part of Brown's plan to wait ten months before responding, in order to "test the Plaintiffs' willingness to go the distance . . . ." (Pls.' Resp. Def.'s Mot. Set Aside 7 (citing *Jerkins v. Lincoln Elec. Co.*, No. 1:04-CV-18810, 2011 WL 3810352, at *7 (N.D. Ohio Aug. 26, 2011))). Under these circumstances, however, removing the posts after being notified that they were potentially unlawful, does not evince such a scheme. In fact, it would have made little strategic sense to wait three months after Plaintiffs' Motion for Default Judgment to set aside an entry of default, as the Court could have ruled on Plaintiffs' Motion at any time in the interim. Risking such an outcome would have forced Top Hat to seek an Order setting aside a final judgment, which requires a higher burden than setting aside an entry of default. *See Dassault Systemes, SA v. Childress*, 663 F.3d 832, 839 (6th Cir. 2011) ("Although the elements are the same, the standard for . . . a motion to set aside a final default judgment under Rule 60(b) is more demanding than . . . a motion to set aside an entry of default under Rule 55(c)." (citation omitted)). Accordingly, this factor weighs in favor of setting aside default.

### B. <u>Meritorious Defense</u>

A defense is "meritorious" if it is "good at law." *$22,050 U.S. Currency*, 595 F.3d at 326. Thus, "the test is not whether the defendant will win at trial, but rather whether the facts alleged by the defendant would constitute a meritorious defense if true." *Creditors Comm. of Park Nursing*

*Ctr., Inc. v. Samuels*, 766 F.2d 261, 264 (6th Cir. 1985). "A mere denial of the claims asserted in the complaint, and nothing more, does not amount to even a 'hint of a suggestion' that the defendant can dispute the allegations in the complaint." *Clarendon Ltd. v. Foster*, No. 92-5626, 1993 WL 339703, at *7 (6th Cir. 1993) (citing *Smith v. Comm'r*, 926 F.2d 1470, 1480 (6th Cir. 1991)). Nonetheless, "even conclusory assertions may be sufficient to establish the 'hint of a suggestion' needed to present a meritorious defense." *Dassault Systemes, SA*, 663 F.3d at 843 (citation omitted).

Plaintiffs acknowledge that Top Hat "has indeed made conclusory assertions, general denials, and claims of lack of evidence as defenses under Rule 55(c)." (Pls.' Resp. Def.'s Mot. Set Aside 9). The Court finds Top Hat has presented at least one meritorious defense. *See Dassault Systemes, SA*, 663 F.3d at 843 ("Although [the defendant] may not succeed on the merits of [all] defenses, that does not foreclose a determination that at least one of [the] asserted defenses may meet the relatively lenient 'good at law' standard."). Top Hat contends Plaintiffs Lanham Act claims are barred by the doctrine of laches. (Def.'s Mot. Set Aside 8). "[T]he Lanham Act does not contain a statute of limitations. Rather, courts use the doctrine of laches to determine whether a suit should be barred." *Audi AG v. D'Amato*, 469 F.3d 534, 545 (6th Cir. 2006) (citation omitted). "Laches is a negligent and unintentional failure to protect one's rights . . . ." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir.1991). The Court must consider: "(1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay." *Audi AG*, 469 F.3d at 545-46 (citation omitted). Top Hat notes the Complaint only alleges Plaintiffs brought suit after "recently" learning of Top Hat's advertisement, but never specifies a date Plaintiffs learned of the posts.

(Def.'s Reply Mot. Set Aside 4, DN 28; *see also* Compl. ¶ 49). Top Hat has, therefore, presented a "hint-of-a-suggestion" that Plaintiffs delay in challenging the infringement may have been unreasonable, considering the uncertainty of the date upon which Plaintiffs first learned of the alleged violations. *See Dassault Systemes, SA*, 663 F.3d at 844 ("[The defendant's] statute-of-limitations defense satisfies the hint-of-a-suggestion requirement, particularly in light of Dassault's inconsistent statements concerning when the company actually learned of the alleged infringement."). This factor also weighs in favor of Top Hat.

### C. <u>Prejudice to Plaintiffs</u>

To establish prejudice, "it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987) (citation omitted). "[D]elay alone is not a sufficient basis for establishing prejudice." *Id.* at 398 (citation omitted). As a general matter, neither is increased litigation cost. *$22,050 U.S. Currency*, 595 F.3d at 325. "[T]he relevant inquiry concerns the future prejudice that will result from reopening the judgment, not prejudice that has already resulted from the defendant's conduct." *Dassault Systemes, SA,* 663 F.3d at 842 (citation omitted).

Plaintiffs argue that if the Court sets aside entry of default they would "likely" need to submit an updated expert report on damages, or potentially retain a new expert in the "unlikely" scenario their expert, Stephen Chamberlin ("Chamberlin"), is no longer available. (Pls.' Resp. Def.'s Mot. Set Aside 15). Plaintiffs' contention that Chamberlin might be unavailable is too speculative; so is the argument that Plaintiffs may need to submit an updated expert report, which is largely irrelevant to prejudice. *See $22,050 U.S. Currency*, 595 F.3d at 325 ("[I]t does not make intuitive sense that simply claiming an increase in litigation cost should be sufficient to establish

prejudice. Setting aside default will *always* increase litigation cost to the plaintiff because the plaintiff will actually have to litigate the case.").

Plaintiffs also claim they face the loss of evidence in the event Top Hat is unable or unwilling to retrieve its complete Facebook history during discovery. (Pls.' Resp. Def.'s Mot. Set Aside 15). Screenshots of each allegedly unlawful advertisement were attached to Plaintiffs' Complaint. (*See* Compl. Ex. 1). But at some unknown time after being served, Top Hat deleted the actual posts from Facebook. (Pls.' Resp. Def.'s Mot. Set Aside 1, 15). Plaintiffs maintain the Facebook history is now the only source of additional data, including dates each post was edited, interacted with, and taken down. (Pls.' Resp. Def.'s Mot. Set Aside 15). Plaintiffs claim that if Top Hat were unable or unwilling to retrieve the Facebook history, it may later deny the authenticity of Plaintiffs' screenshots or otherwise dispute the length of time each misuse remained active on the Facebook page. (Pls.' Resp. Def.'s Mot. Set Aside 15).

Regarding Top Hat's ability to dispute the authenticity of Plaintiffs' screenshots, the Court finds Plaintiffs would be in no worse position had the Court ruled on their Motion for Default Judgment, which only included the appended screenshots. "[E]ven when the defendant defaults and is not present to object, damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010); *see also Optigenex, Inc. v. FDL Fulfillment Servs. UG*, No. 3:17-CV-00689-GNS, 2020 WL 1821922, at *6 (W.D. Ky. Apr. 10, 2020) ("Within twenty-one (21) days of the entry of this Memorandum Opinion and Order, Plaintiff shall submit admissible evidence of its damages . . . ."). Similarly, to the extent Plaintiffs claim Top Hat will be unwilling to retrieve its complete Facebook history, this argument is purely speculative. *See, e.g., S.G. Enter., LLC v. Seaboard Paper & Twine*, No. 2:14-CV-3471 WHW CLW, 2015 WL 3630965, at *2 (D.N.J. June 10, 2015) (rejecting as "speculative" Plaintiff's

argument that "it is anticipated that [the defendant] will not produce the relevant and material electronically stored information . . . ." (internal quotation marks omitted)).

Plaintiffs' concern that Top Hat may be *unable* to retrieve the deleted evidence, however, is a different question. *But cf. Dassault Systemes, SA*, 663 F.3d at 842 ("Dassault's newly presented assertion that the hard drives of the computers in the FBI's possession could freeze up and destroy the evidence is completely unsupported . . . ."); *Kong v. Getty*, No. CV 18-9321-MWF-JDEx, 2020 WL 5237277, at *4 (C.D. Cal. July 15, 2020) ("Third Party Plaintiffs do not assert *any concrete, specific examples of spoiled evidence* . . . ." (emphasis added)); *Mays v. Cavalry Staffing LLC*, No. CV-14-02593-PHX-GMS, 2016 WL 3135833, at *2 (D. Ariz. June 6, 2016) ("Without any *direct or circumstantial proof of spoliation of other loss of evidence*, the posture of this case is not different from when Plaintiff filed his complaint." (emphasis added)). Yet, under these circumstances, the fact that Top Hat deleted the offending posts does not end the discussion, as "the key evidence is already in plaintiff's possession." *Argent v. Off. of Pers. Mgmt. of U.S.*, No. 96 CIV. 2516 (PKL), 1997 WL 278115, at *4 (S.D.N.Y. May 22, 1997).

Plaintiffs moved for Default Judgment already armed with the screenshots of each advertisement and a lengthy expert report on damages. (*See* Pl.'s Mot. Default J.). Contrary to Plaintiffs' contention, the screenshots show the date each post was created, and customer engagement, by way of "likes" and comments. (Compl. Ex. 1, at 2-16). Furthermore, in similar Lanham Act cases, "customer confusion" and damages are primarily proved through expert testimony, consumer surveys, market research, and customer affidavits. *See, e.g.*, *Longoria v. Million Dollar Corp.*, No. 18-CV-02266-PAB-NYW, 2021 WL 1210314, at *4 (D. Colo. Mar. 31, 2021); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004). In fact, Plaintiffs state that, in addition to the models' recognizable likeness, Plaintiffs "will be able to further

support the likelihood of confusion element of their Lanham Act claims with admissible survey evidence likely to show consumer recognition of Plaintiffs and confusion regarding the affiliation between the person pictured in the ad and the advertised strip club." (Pls.' Resp. Def.'s Mot. Set Aside 11). Importantly, as each post advertised events in 2015 and 2016, it is unlikely additional consumers, beyond those captured in Plaintiffs' screenshots, would engage with the posts in 2021.[2]

Finally, to the extent Plaintiffs are concerned about their ability to enjoin any future violations because Top Hat may deny the ongoing nature of the alleged conduct, this alone does not preclude an injunction. *See Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.,* 703 F. Supp. 2d 671, 701 (W.D. Ky. 2010), *aff'd*, 679 F.3d 410 (6th Cir. 2012). Ultimately, "Plaintiff's argument is simply another way of stating that setting aside the entry of default would delay the injunction it seeks or, in other words, 'would cause a '[m]ere delay in satisfying' its claim.'" *OneMD-Louisville PLLC, LLC*, 2020 WL 2461885, at *2 (alteration in original).

Top Hat admitted in its motions to taking down the posts after receiving the Complaint and desires discovery. (Def.'s Reply Mot. Set Aside 2, 11). As one court put it, "[v]acating the default would not deny Plaintiff a remedy for destruction of evidence: it would not preclude spoliation sanctions, or an independent action for fraudulent concealment of information material to litigation." *S.G. Enter., LLC*, 2015 WL 3630965, at *2 (internal citation omitted) (citation omitted); *see also Dixon v. Ragland*, No. 03 CIV. 0826(LTS)(KN), 2005 WL 2649484, at *3

---

[2] Plaintiffs' expert, Chamberlin, also notes "the number of times the image was viewed or 'liked' and the duration that the images remain available on a site within a negotiated Length of Exposure of Usage Period are all factors that are outside the influence of the . . . model. . . . Once an image is on the web and associated with an Advertiser the number of views, the number of 'shares', the number of downloads and copies made is generally unknowable." (Pls.' Mot. Default J. Ex. 1, at 8, DN 12-2). Chamberlin, in fact, did not include a fee "based on time." (Pls.' Mot. Default J. Ex. 1, at 15). Instead, Chamberlin presumed in his calculation that Plaintiffs' images were "effectively used" for an "unlimited duration", as that term is used in the modeling industry. (Pls.' Mot. Default J. Ex. 1, at 15).

(S.D.N.Y. Oct. 14, 2005) ("While loss of evidence is a serious and potentially prejudicial matter, the Court, having weighed the policy preferring the resolution of disputes on their merits and the tools available to the Court to sanction any evidence of spoliation and to manage the presentation of proof, concludes that the prejudice to Plaintiff . . . is insufficient to warrant denial of the application to vacate the default.").

Accordingly, the Court finds good cause for setting aside the entry of default and grants Defendant's Motion.[3] As the Court grants Top Hat's Motion to Set Aside Default, Plaintiffs' Motion for Default Judgment is denied as moot.[4] *See OneMD-Louisville PLLC, LLC*, 2020 WL 2461885, at *9.

### III. CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Extension of Time (DN 15) and Defendant's Motion to Set Aside Entry of Default and Amended Entry of Default (DN 22) are **GRANTED**.

2. Plaintiffs' Motion for Default Judgment (DN 12) and Plaintiffs' Motion to Strike (DN 19) are **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

July 9, 2021

cc: counsel of record

---

[3] The Court similarly grants Defendant's Motion for Extension of Time to respond to Plaintiffs' Motion for Default Judgment. (Def.'s Mot. Ext. Time, DN 15).

[4] Plaintiffs' Motion to strike Top Hat's Answer is similarly denied. *See Jackson v. City of Detroit*, No. 18-14009, 2019 WL 1255245, at *1 (E.D. Mich. Mar. 19, 2019).